UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  10-60052-CV-COHN

TOWER INSURANCE COMPANY OF NEW YORK,

Magistrate Judge Seltzer

Petitioner,

vs.

RAINBOW GRANITE & MARBLE, INC., a Florida
corporation, PEDRO OLIVEIRA and SANDRA CORRA,

Respondents.

_____/

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Petitioner Tower Insurance Company of

New York's Motion for Summary Judgment [DE 29] and Statement of Material Facts

[DE 30], Respondents Pedro Oliveira and Sandra Corra's Response [DE 32],

Respondent Rainbow Granite's Notice of Non-Response [DE 31] and Petitioner's Reply

to the Responses [DE 35].  The Court has carefully considered the motion, responses,

and reply, and is otherwise fully advised in the premises.  The motion became ripe on

August 27, 2010.

### I.  BACKGROUND

Petitioner Tower Insurance Company ("Tower") filed this action seeking a

declaratory judgment that it does not owe a duty to defend or to indemnify its insured,

Rainbow Granite & Marble, Inc. ("Rainbow"), for any bodily injury claim of Pedro Oliveira

("Oliveira") and his wife, Sandra Corra (collectively, "Respondents").  Mr. Oliveira was

injured on October 3, 2008, while working for Rainbow.  Petition, ¶10.  On December 2,

2009, through counsel, Oliveira and his spouse made a demand upon Tower for

payment of the $1 million policy limits.  Id., ¶ 11.  A dispute exists as to whether Mr.

Oliveira was an employee of Rainbow.  If an employee, then the insurance policy excludes him from coverage under the liability policy.

The undisputed facts are that Oliveira was hired in July of 2008 to work as a delivery driver for Rainbow after filling out a basic employment application.  He worked full time, Monday through Friday, from 8:00 a.m. until 5:00 p.m.  Statement of Facts, ¶ 9 [DE 30].  He earned $9.00 per hour and was paid every two weeks.  Id.  Rainbow did not take out any deductions from his pay for federal income tax, Medicare tax, or Social Security (FICA) tax.  Exhibit 2 to Response, Rainbow's Response to Request for Admissions [DE 32].  Rainbow provided Mr. Oliveira with a 1099 tax form for his employment.  Deposition of Pedro Corra Oliveira at 37 [DE 30-2] (hereinafter, "Oliveira deposition").  Rainbow did not make any payments to any government with regard to Mr. Oliveira for income tax, Medicare tax, Social Security (FICA) tax, nor did it provide him with health insurance, retirement benefits, vacation days or sick days.  Response to Request for Admissions.  Rainbow did not have worker's compensation insurance.  Id.

Mr. Oliveira does not have a Social Security number.  Oliveira Deposition at 10. He filed his taxes for 2008 using his wife's Social Security number and his ITIN number. Id. at 36.  As further background, he received a Bachelor of Law degree when graduating from college in Brazil in 1992, but also worked in music for many years.  Id. at 12-14.  He worked in the legal field in Brazil for a few years, before first moving to the United States in 2001 with his wife, Sandra Corra.  Id. at 4.  Ms. Corra came here to work in accounting for Brazil Connections, a restaurant.  Id. at 4, 8.  After her permission to work in the United States ran out, the couple moved back to Brazil in January of 2006, where Oliveira worked as a music director for a church.  The church

arranged for him to return to the United States in April of 2006 and employed him as a music director until January of 2008.  Id. at 15.  The work ended because the immigration process to secure Mr. Oliveira legal work status was taking too long.  Id. He then began doing similar work on a volunteer basis for another church, though that church gives him "gifts" of $200 to $400 per week depending upon how many times he plays at the church.  Id. at 16.  He applied to work at Rainbow later in 2008.

Oliveira worked for Rainbow's president and owner, Carlismar Azevedo.  Mr. Azevedo would give him his daily assignments, telling him where he had to go and what he had to do.  Statement of Facts, ¶ 15; Oliveira Deposition at 23.  Mr. Oliveira used Rainbow's leased truck to make these deliveries and pick ups.  Statement of Facts, ¶¶ 12-15.  Rainbow paid the fuel and expenses for the truck.  Id., ¶ 16.  Oliveira also helped Azevedo unload the granite from the truck to store it in Rainbow's warehouse. Id., ¶¶ 17-19; Oliveira Deposition at 28-29.  He was injured during this unloading process when a piece of granite fell on his foot.  Statement of Facts, ¶¶ 20-21.  Half of his big toe on his right foot and most of the next two toes were amputated.  Oliveira Deposition at 32.  Rainbow continued to pay Oliveira his biweekly salary for two additional months despite his inability to work during that time, paid his doctor bill, paid $2,000 of the $17,000 hospital bill, and continues to make monthly payments to the hospital.  Id. at 33-34; Deposition of Carlismar Azevedo at 15, 19, 22-23 [DE 30-3].

The only disputed issue of fact concerns whether Azevedo told Oliveira the actual routes to take while making deliveries and pickups.  In his deposition, Azevedo stated that he told Oliveira exactly which roads to take to get to his delivery stops.  Id. at 18.  However, Oliveira disputes this fact in an affidavit filed with his response to the

motion for summary judgment.  Mr. Oliveira states that "I was never told what routes to use in making those deliveries."  Affidavit of Pedro Oliveira, ¶ 3, Exhibit 1 to Response [DE 32].

In its present motion, Tower seeks summary judgment that it has no duty to defend or to indemnify Rainbow because Oliveira was excluded from coverage as an employee at the time of the accident, as the injuries occurred during the course of his duties related to the conduct of Rainbow's business.  Respondents Oliveira and Corra oppose the motion.  Respondent Rainbow Granite has filed a notice of non-response to the motion.

## II.  DISCUSSION

### A.  Summary Judgment Standard

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case.  Id. at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Electronic Industrial Co. v.

4

Zenith Radio Corp., 475 U.S. 574, 586 (1986).  According to the plain language of  Fed. R. Civ. P. 56(e), the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party."  Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).  If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted."  Anderson, 477 U.S. at 249-50.

## B.  Employee or Independent Contractor

Tower asserts that under the multi-factor test adopted by the Florida Supreme Court in Cantor v. Cochran, 184 So.2d 173 (Fla.1966), there are no disputed issues of material fact to preclude summary judgment in its favor on the issue of Oliveira's status as an employee of Rainbow.  Respondents primarily argue that the fact that Oliveira had no taxes taken out of his paycheck and no tax payments made by his employer to any governmental entity means he is an independent contractor.

The Cantor test, adopted from Section 220 of the Restatement (2d) of Agency for determining whether a party is an independent contractor or an employee, continues

to be followed in Florida:

> (a) the extent of control which, by the agreement, the master may exercise over the details of the work;
> (b) whether or not the one employed is engaged in a distinct occupation or business;
> (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
> (d) the skill required in the particular occupation;
> (e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
> (f) the length of time for which the person is employed;
> (g) the method of payment, whether by the time or by the job;
> (h) whether the work is part of the regular business of the employer;
> (I) whether or not the parties believe they are creating the relation of master and servant; and
> (j) whether the principal is or is not in business.

Buitrago v. Rohr, 672 So.646, 647-48 (Fla. Dist. Ct. App. 1996) (owner of company hired to advertise client's business by hot air balloon is an independent contractor, not an employee of client).

Florida courts have applied these factors to various types of work, including truck drivers.  In Justice v. Belford Trucking Co., 272 So. 2d 131, 136 (Fla. 1972), the court held that an employee relationship existed despite a written contract stating that Justice was an independent contractor, where the circumstances indicated:

> claimant was merely a truck driver employee of Belford in its regular trucking business, under its direction and control as to all hauling trips, similar to any other truck driver employed by an interstate trucking company.  He was subject to termination at the discretion of Belford.  As a truck driver in the regular trucking business of Belford, he used the trailer supplied him by Belford in exclusively carrying out its orders as to freight hauled under its franchise and remitted to it the gross earnings derived from freight charges.

In 4139 Management, Inc. v. Dept. of Labor and Employment, 763 So.2d 514, 518 (Fla. Dist. Ct. App. 2000), the court concluded that maids were not employees of a

6

condominium association with the following evidence:

> The Association did not own any of the units which the maids cleaned, neither did it control which maids cleaned which units. Keys were left at the front desk for the units which required cleaning, and the maids would pick up the keys, apparently at random. Stratton and the other maids worked only when there were units to clean and could decline the Association's request to come in to clean if they so chose. They were free to, and in fact did, work for others as well as at the Association's condominium. Stratton herself had business cards announcing "Alison Stratton's Housekeeping Service-commercial-residential" with her phone number and post office address. Maids submitted invoices for the units they cleaned and were paid on a per unit basis, regardless of the time required to complete the work. Additionally, they often brought spouses, friends and relatives to help clean. At the end of the year, the Association gave the maids a Form 1099 "Miscellaneous Income" for the maids to report their income. The maids did not receive any benefits such as vacation, sick leave or insurance, and no federal income tax or social security taxes were withheld from their pay.

In Hilldrup Transfer & Storage v. Dept. of Labor and Employment, 447 So. 2d 414 (Fla. Dist. Ct. App. 1984), the court determined that contract operators of truck tractors for a moving company were not employees but independent contractors.  The operators had a written agreement that paid them 53% of the establishment rate for a particular haul.  447 So. 2d at 416.  They were responsible for payment of all expenses connected with the ownership and operation of their tractors and payment of wages to any hired help they required.  Id.  While the operators received their assignments from Hilldrup, the court relied upon the fact that they could increase their own profits by prudent operation and maintenance of their tractors, they can select their own hours, routes and assignments, and they are "able to acquire and utilize profitably through care, judgment and their own industry an expensive piece of equipment which may substantially increase their income-producing potential."  Id.  The court downplayed the state agency's reliance on facts such as requirements for operators to wear company

uniforms, paint their tractors in company colors, and notify the company daily of their whereabouts and contents of their vehicles.

Against this legal backdrop, this Court recognizes that the first <u>Cantor</u> factor of the extent of control over the worker is most significant. <u>Buitrago</u>, 672 So.2d at 648. In the present case, the only disputed issue of fact concerns the extent of control over the delivery routes taken by Oliveira. This Court concludes that this issue of route selection is not material: even if Oliveira chose his own routes, he was still getting his daily assignments and destinations from Azevedo. Rainbow clearly controlled how Oliveira spent his workday. In fact, nearly all the factors of the <u>Cantor</u> test are in favor of concluding that Oliveira was an employee: he was a delivery driver for just one company, a low-skill job for which he was paid by the hour, used the employer's truck and place of work, and did work that is part of the regular business of the employer. He could not earn more money by making more deliveries. Oliveira is far more like the truck drivers in <u>Justice</u> than those in <u>Hilldrup</u>.

The Court recognizes that Rainbow Granite gained a financial benefit by not making deductions from Oliveira's pay and not having him covered by worker's compensation insurance. The form of payment, however, is just one of the factors the Court must consider. Moreover, Rainbow Granite does not oppose the present motion. In other words, Rainbow Granite has not taken inconsistent positions by not giving an employee certain benefits while he worked but then thwarting his efforts to obtain compensation after he is injured. Finally, the fact that Rainbow continued to pay his wages for two months and paid his medical bills after he was injured also indicates that Rainbow believed he was an employee.

8

Although the parties appropriately only cite to Florida law in this diversity action, this Court acknowledges that the United States Court of Appeals for the Eleventh Circuit has discussed this issue as well, usually in the context of the federal Fair Labor Standards Act.  "The Supreme Court has explained that courts must determine whether, as a matter of 'economic reality,' an individual is an employee or an independent contractor in business for himself."  Freund v. Hi-Tech Satellite, Inc., 185 Fed. Appx. 782, 782-83 (11th Cir. 2006) (citing Rutherford Food Corp. v. McComb, 331 U.S. 722, 728 (1947)).  The determination of employment status under the FLSA is a question of law; the subsidiary findings which lead to this determination are issues of fact.  Id. at 783, citing Patel v. Wargo, 803 F.2d 632, 634 n.1 (11th Cir. 1986).  In making this determination, the following underlying factors should be considered:

> 1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed;
>
> 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;
>
> 3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers;
>
> 4) whether the service rendered requires a special skill;
>
> 5) the degree of permanency and duration of the working relationship;
>
> 6) the extent to which the service rendered is an integral part of the alleged employer's business.

Secretary of Labor, U.S. Dept. of Labor v. Lauritzen, 835 F.2d 1529, 1535 (7th Cir. 1987).

In this action, the first factor of employer's control is discussed above.  Oliveira had no opportunity for profit or loss -- he was paid by the hour.  He made no investment

in equipment, materials or hiring other workers.  The services he rendered did not require a special skill beyond driving (no commercial driving license required), and his services were an integral part of Rainbow's business.  The only factor that weighs slightly in favor of an independent contractor is the short duration of the working relationship.

Taking into account all of the above analysis, the Court concludes as a matter of law that Oliveira was an employee of Rainbow Granite, and that there are no genuine issues of material fact precluding summary judgment.  Because Oliveira was an employee at the time of the accident on October 3, 2008, Tower has neither a duty to defend nor indemnify Rainbow Granite for any claims involving Oliveira arising out of that incident.

## III.  CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.     Petitioner Tower Insurance Company of New York's Motion for Summary Judgment [DE 29] is hereby **GRANTED;**

2.     The Court will separately enter a final summary judgment in favor of Petitioner.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 13th day of September, 2010.

JAMES I. COHN
United States District Judge

copies to:

counsel of record on CM/ECF